Good morning, your honors. May it please the court, I'm Daniel Behrer for Allstate Insurance Company. I'd like to reserve five minutes for rebuttal, and this case is about what's a household, and Mr. Chacksfield's counsel has pointed out that what is a household can vary quite a bit, and the cases bear that out, including the Jacobs v. Fire Insurance case, which had the term household is not necessarily ambiguous, it's just that it's applied to different situations and takes different forms. But there has to be some limit to what is a household for the purposes of a coverage clause that covers relatives who are residents of the household, like this one. And Jacobs v. Fire Insurance Exchange draws some boundaries for that. That is also a coverage clause case, and the subsequent cases such as Mitroff have pointed out that even though Jacobs itself said we don't apply the rule of interpreting coverage clauses more broadly than exclusions, Jacobs did pick a broad definition of household. And under that definition, a down-and-out brother whom the name ensured allows to camp nearly a football field. Give me the facts of Jacobs. Wasn't there a common roof of the two duplexes? substance. She was elderly, and Connie moved into the unit which Irma owned mainly to provide care to Irma, had a key to Irma's unit, had access to her unit as necessary to provide her caregiving needs, took her to appointments, managed her medications and her financial affairs, but they didn't take meals together. Irma had meals on wheels, and both units had their own backyards, etc. And Louis was involved somewhat, not to the same extent as his mother, in Irma's care running some errands. And the court looked at the facts, including that Connie's family paid rent to Irma, although it was a family arrangement like the one here, and there was no written agreement, and the fact that they took meals separately, they didn't take meals together, that Irma was not a head of household that Louis submitted to the authority of, and also to the subjective intent of Irma, who said she didn't consider the two to be the same household, she considered them to be separate households. How did the trial court in Jacob determine the issue? Was it after a bench trial, or was it a motion of summary judgment? Because the facts that you've indicated to me so far could go both ways. It was a summary judgment, Your Honor. It was a summary judgment granted in favor of the defendant-insurer fire insurance exchange, which was affirmed on appeal. So there, there was a common roof, but the elements of separate households that you've indicated, such as meals being taken separately and rent being paid, even though it was a family situation, made the two households separate. Exactly, Your Honor. As a matter of law. As a matter of law, based on the undisputed facts, and the facts here are also undisputed. There's no contention that there are disputed facts. The main source is Gordon Hammer's, the named insured's, deposition testimony, and there's no evidence in the record contesting it. Now, the brother's trailer and its fencing around the trailer were within the ground owned by the other brother, by the insured brother, and that was fenced also. Well, it was owned by the family trust, transferred to the family trust in the 1990s, about maybe 10 years before this incident, and yes, it was all fenced in, all 11 acres of it. So, if you're looking at, under the same roof or within the curtilage, Mr. Chaxfield's not pointed to any case law that says that something just within the fence surrounding 11 acres is within the curtilage. Well, that's interesting because California apparently draws on Fourth Amendment cases as does, well, California does, and Fourth Amendment cases are driven by the concept of expectations of privacy because they're directed against unreasonable searches and seizures. In this case, the curtilage, it's Gordon's curtilage for purposes of an insurance policy to cover against liabilities that Gordon might incur in the management of his household and his property. And the district, the court in this case, the district court was moved by that. He said, well, you know, this is a big property, 11 acres, and having a trailer within 300 feet of the main house as a proportion isn't that big a deal. It's not that, it's a rural area. It's, what is striking about the fencing is fencing is, in Fourth Amendment cases, looked at as a way of screening out from observation. Well, these are barbed wire fences. They're not protecting against observation. They're containment and protection. And so was the fence around the trailer. It was to keep the dogs away from the cattle. So if you were, if this were Gordon who was, and this is Gordon's curtilage, which is at issue, if you were looking at this from Gordon's perspective, suppose his trailer was 300 feet away, but that's where he maintained his office. He kept his office there because he didn't want to, he wanted privacy away from the rest of the family. Would that, and some, you know, the issue was whether or not something affected, created liability, potential liability for Gordon with respect to something around the trailer. Are you saying that he couldn't rely on his curtilage protection because he happened to move his trailer 300 feet away instead of moving it closer and bring it in with 100 feet? That's what I'm having a bit of trouble with here. Well, three answers to that, Your Honor. One of them is that while the district court was looking to Fourth Amendment law for the curtilage, Jacobs just went straight to Black's Law Dictionary and didn't look at expectations of privacy. It looked at buildings that are near, close to the main residence used for a domestic purpose. I understand, Your Honor, saying that if he was using it as his office, that might be viewed as using it as a domestic purpose. So the distance wouldn't work against him in that case. It would be being used by him for a domestic purpose. But still there's the issue of distance because even in the, certainly the Dunn case, which looked at Fourth Amendment, said that distance is a consideration. Even if you're looking at the Fourth Amendment cases and the ones that say that if you're looking at a rural area, you have a different consideration. I think the one case that said a pond 300 feet away might be in the curtilage the same as a bloke's barbecue in the backyard in an urban area. But even there, the California Fourth Amendment cases say that something that is more than 100 feet away is unlikely to be considered part of the curtilage. Well, that's for Fourth Amendment. That's my point. There are other underlying policies, but for an insurance coverage where the homeowner is looking for protection and insurance against liability to third persons, that kind of flips the interest because the homeowner is buying coverage. He's not worried about expectations of privacy. He's worried about expectations of liability. And that's what we're talking about here. And certainly when you're looking at coverage, you've got one case of the ones I've gone through, the Cal Farm versus Bozeron case, which is cited in the appellee's brief, which talks about the purpose of this coverage provision, which is rather common sense. It's the insurer, the name insured, wants to get coverage for his relatives who live there because he can be held liable for it, also for his family. He's not interested in having the curtilage as broad as possible for his protection. Whereas Fourth Amendment, there's a competing interest of the state in wanting to be able to prevent criminal activity on a place and then not have the curtilage so big that it gives protection against searches and seizures that are serving a different policy. Well, but then going to the expectation of privacy, perhaps if Gordon kept his office in the trailer, he might have an expectation of privacy when he's in his office, and perhaps there might be, there's probably, he could argue there's separate Fourth Amendment protection for the office separate from his house. It's not a situation where you've got the backyard or the garage where the source of Fourth Amendment rights. Again, that just makes the point I'm trying to make, which is when you're looking at it from liability coverage, he doesn't want to have to be dependent on whether he's got insurance coverage for a building, you know, that he owns or a trailer that he owns because it's too far, he's put it too far away from his house. Well, Your Honor, looking at whether the person... You could argue for making curtilage more expansive in an insurance coverage case than it would in a Fourth Amendment case. That's what I'm driving at, but I think I'm using up your time. Well, the issue there, Your Honor, is that we're looking at whether this person is a member of the household, and that is the context in which the cases are defining under the same roof or the curtilage, and I think there's an implication there that the farther you're living away, the less likely it is you're living in the household. Do you have any case from a California court saying that we need to define curtilage in the insurance context the same way curtilage is defined in the Fourth Amendment context? No, Your Honor. The district court took it upon itself to look to Fourth Amendment law. The only case I'm aware of in the insurance context defining curtilage is Jacobs v. Fire Insurance Exchange, and it looked to Black's Law Dictionary. And People v. Ling, a 2010 court of appeals case, sounds like a criminal case and says it is rare for curtilage to extend more than 100 feet beyond the home. Yes, Your Honor. That was a Fourth Amendment case? Yes, it was. So it wasn't really a coverage case? Correct, Your Honor. Thank you. We cited it in relation to the Fourth Amendment analysis. All right. Thank you very much. Thank you, Your Honor. Good morning. May it please the Court. William O'Neill on behalf of Appellee Ellery Chaxfield. I think one quote from the record truly puts this case in perspective, and that is at page 194, lines 8 through 10. This is a deposition of Gordon Hammers talking about his older brother, Robert. And he says, I did what I could to facilitate his life with the intention of he would be getting out of my hair as soon as possible. In that one sentence is the crux of this case, whether Robert is a member of the household or not a member of the household. And I think you have to step back, take the bigger view of it, and remember for most of us in functional households, we are worried about careers, the nice car we want to buy, the investments, the retirement, the getting the kids through college, all of those wonderful family goals that a functional household works on. Let's go back to the law. Jacobs is the law in California, right? Not exactly. Tell me why not. Jacobs takes one of the definitions of household out of the California Supreme Court's decision in Ireland and says completely in California, the term household is not ambiguous. This is what it means. Exactly these words. And since the 90s in California, as the Palmer court point points out, you don't a priori decide whether a term in an insurance policy is ambiguous or not ambiguous. Oh, yes, you do. Under Bank of West, I respectfully differ with you. An insurance policy in California is a contract. A contract is determined by contractual interpretation laws of section 1635 at seek of the civil code. If the term used in the contract is ambiguous and subject to a plain reading, you don't go beyond that, period. I agree, Your Honor. All right. Then why are you telling me that household cannot be held to be not ambiguous? I don't think we'd be here if it was not ambiguous. You might not be here, but they would. The problem is it's ambiguous in application. And I think that's what all of the companies are saying. But that's not what Jacob said. Jacob said household is not ambiguous to be a member of a household. One has to live under a common roof or be within the cartilage. All right. Now, we're applying California law. Obviously, Robert did not live under Gordon's roof. Do you agree with that? If we take the term roof, absolutely, literally a single roof. Well, it's not a common roof, right? A common roof. Houses can be built with various outbuildings. And I'm not sure that if you took that statement from Jacob's to a house that had several outbuildings and, you know, a mother-in-law flat that has its own roof. There are other reasons. There are other interpretations under the roof in the Catholic liturgy. Taking a person under one's roof does not necessarily mean a physical roof. All right. But that's not what Jacob says. Jacob says here we have Irma and Luis. They live in a duplex. Even under that circumstance, which is one roof over duplex. Luis is not a member of her household. And Jacob lays down the law for California. Now, you may disagree with that law and we might also. But aren't we bound by it? And it reverses Tompkins. It is a court of appeal decision which contradicts a prior California Supreme Court decision. Which which is a prior California Supreme Court decision contradicts Palmer Island. Island versus Fireman's Fund, which is where Jacobs actually pulls that quote. And Island itself says the term is ambiguous. Should be construed in the standard way that an ambiguous term should be. This island determined that household is an ambiguous term. Yes, it does. But then once it gets defined, don't we have to treat it as a defined term? It may have been ambiguous at one point, but once it gets defined by the California courts, it's not ambiguous anymore. Right. Well, I would say it's once it's defined by the California Supreme Court. Yes. So what in our case law says it has to be defined by the California Supreme Court? That's my understanding of the basic rule of interpretation is that we've got to follow what California Supreme Court. But I mean, we have to follow California courts. And if we think that the California intermediate appellate courts have said something that the Supreme California Supreme Court would agree with. Then don't we follow what the intermediate court says? Of course. And there's no reason to believe that. I mean, this this definition of household has now been followed for many years. Right. This California Supreme Court has never said anything to suggest it disagrees with what's been going on in the lower courts. There has not been a case that has disagreed and pulled Jacobs into account by the California Supreme Court, though the same court of appeal in Mitterrand talks about, well, but you still have to apply it broadly for coverage and narrowly for exclusions. But I really don't think that we have to determine whether Jacobs is good law or not to solve this particular dispute. I think flatly and easily under Jacobs, Robert is a member of the household. Why is he in the common curtilage? Because the way Jacobs is looking at it is. To take the idea of curtilage from Black's Law Dictionary and talking about the most central and important point, includes the buildings used for domestic purposes in the conduct of family affairs. This is being used for domestic purposes to house a family member, which is quintessential family affairs. So what if a family member lives out in the country but has an apartment in the city and lets a family member live in the apartment in the city? They own it, but it's really far away. It's 50 miles away. Under your meaning of common curtilage, would that be within the curtilage because it's a building used for domestic affairs? Because it depends on what the policy is. We've got here a complex of policies surrounding this particular property, the car that's housed at that particular property, the umbrella that goes over the top of the homeowner's insurance and the automobile insurance at that property for this particular homeowner. In the time that you're giving me, there's probably several different policies, one for this property, another for that property. Well, there may not be, right? That's the question, right? You've got a policy that covers your household. Could an apartment 50 miles away that you own be part of your household because you've given it to a relative to live in? I would say yes on an umbrella policy like this, absolutely. It's part of your household. It's part of your economic activity. It's part of the set of domestic properties that you use, and you're using it for a relative, for their benefit, as part of your family obligation to a relative. That would not be a problem at all. What's the purpose of using the word curtilage then? Doesn't that just eviscerate the notion of a curtilage? A curtilage goes not to somebody has an apartment in the city and they have a house somewhere else. It goes to here we have this property, and what's within its curtilage? Here we have an 11-acre property. It's a very large property, fenced in for animals. It's got various buildings, facilities, wells, carports, places for the tools, a trailer for a brother to live in, the main house, an enclosed laundry room that's sort of off the side of the house but still enclosed. It's not like where you get the neat boundaries in a city. Do you think the entire 11 acres are part of the curtilage? It would depend on how they're used, when they're used, where they're used. I don't think in this case we need to go beyond the trailer itself. The question is the trailer itself within the curtilage. It's being used for domestic purposes, for the conduct of family business or family affairs. Because that's the definition of how far that line goes out, it's within that line. Whether that line went out further, we don't really know. We don't have an aerial map showing, okay, yes, but it also had these 25 other things that were all used on the property. Counsel, I was just reading over Island. Island has nothing to do with geographical extension as determining whether a person is a member of the household. It has to do only with the issue of whether a son who was in the armed services was a member of the household. Jacobs is the case that brought in that issue. And it also says that the term household involves one head living together in a unit of permanent and domestic character under one roof, a collective body of persons living together within one curtilage. So it's using the same language as Jacobs. Now, why do you say that Island deter is content is intention with Jacobs? Because Island then concludes and says Island concludes that the man in the services was not a member of the household. Correct. If we're going to draw it down simply to its factual holding, then we. One case is about cows and the other case is about automobiles, right? A little bit. These cases are they're messy because households are messy. All of these cases are issued deal with the particular factual issues before them. And in particular, Jacobs, we have Louise not being a member of the household. The support went the opposite direction in that case. In this case, Gordon is supporting his older brother. Louise was not providing any support to Irma aside from running an errand for her and Irma was providing no support to him. Again, that's apples and oranges as well because we have a completely different factual situation in terms of the relationships between the parties in Jacobs. In Jacobs, we have a woman who owns a duplex renting out one half of it to her daughter and her husband and stepson. And the stepson is the one asking for coverage under his stepmother's grandmother's policy. But the grandmother is not doing anything for Louise. Louise may be doing a few things for her, but she's not doing anything for Louise. In this case, we've got Gordon taking his older brother who's down and out, homeless, and giving him the rock solid basics for life. A place to live, some transportation, utilities, the stuff that keeps body and soul together, which is the essence of what households are. It's a group of people coming together to form a safe environment in which to live, to survive. The point I was starting with before, which is that this comes down to the essence of family, the essence of household. A coming together for mutual support, which if you read the policy, which is what we're interpreting, the policy says a relative who's a resident of your household. Those are the three words that operate in that insurance policy. We get into the definition of curtilage because it's brought up by the case law. Allstate could have written the Jacobs decision definition into its policy to say that's what household means. They've had many years to do that. But I mean, we're supposed to interpret the policy under California law, so essentially they don't need to do that. Jacobs has been around for a long time. That's the definition of household. And Jacobs fits. Robert fits easily under Jacobs. Do you have a case? How does he fit easily under Jacobs, sir? He is, we go through a collection of persons living together in domestic character. As I remember the record, Gordon made it quite clear that Robert was not allowed in his house. Correct. And in Mitra, the next case by the same court of appeal, the first district, it was an estranged husband and wife. And husband had upstairs, wife had downstairs. No meals together, they hated each other, forbid each other from their part of the house. And just as right of line, in fact worse, they came to blows. They came to domestic violence because somebody crossed the line. And in that case, on a coverage exclusion, she was the household. But they're under the same roof, so I'd like to bring you back to curtilage. Do you have any case that says that for insurance purposes we should not follow Fourth Amendment cases about what curtilage means? I don't have a case that says you should or you shouldn't. The case I've found is Jacobs saying we need to look to Black's Law Dictionary for curtilage because we're looking at the idea of common curtilage. It's an old, old concept that goes back, common law from ages ago, where we're looking at buildings that didn't always have locks on them and farmhouses out on the prairie that have a work shed here and a place you're staying when you're overseeing the cattle or whatever. I mean, it's an old term. I think you've exhausted your time, Mr. O'Neill. Thank you very much. Thank you, Your Honor. I believe you have some time left for rebuttal, Mr. Barrow. Yes, Your Honor. Dealing with Mitroff, these cases are messy, but they do fall into recognizable subcategories. Mitroff falls into the subcategory of estranged spouses sharing the same roof or same area, sort of like the Mazzilli, New Jersey case that the district court looked to, and there's policies there that aren't here. In particular, the Mitroff court said, well, if you judge this just on the intent of the spouses as to whether they're separated or not while they're living together, then the coverage situation could change day by day depending on whether they're getting along or not. That's not the situation here. These aren't spouses. But they're brothers. I mean, why is brother so much less of a close relationship than spouse? It's a pretty close relationship. It is a very close relationship. But the Mazzilli case talked about there's a policy with spouses. You always hope they're going to get back together because there's a societal policy in spouses getting back together and being together. Well, there's a family, too. I'm looking at Jacob's ultimate definition of household. Household may be broadly defined as the collection of persons. In this case, we have that. This is what the district court found. It thought the only issue was distance. It said it was all the other factors in Jacob's he found were satisfying. Okay, but in any event, collection of persons related, in this case they were, who live within, then the question is whether it's a common cartilage, who direct their attention toward a common goal. It was to rehabilitate his brother. That's why he was allowed to live there, a member of the family in that sense, consisting of their mutual interest. So if you look at those factors, that is what Robert's relationship was to his brother. And I come back to what was troubling me in the first place, which is this is a coverage case for liability, and we're defining Gordon's cartilage for insurance coverage purposes. And what you're saying is his trailer that is 300 feet away is not covered under his umbrella policy. Are you saying that? If there were a slip and fall in Robert's trailer, would that not be covered? There was a slip and fall in Robert's trailer, and the policy ensures the family trust. I would say that there was a slip and fall in Robert's trailer. If it was Robert who was the one who did it, that would be excluded because. No, not Robert. Robert's friend, Max, comes in and slips and falls in Robert's trailer. Robert is not insured. Robert has no assets. Max sues Gordon. No coverage? The coverage for Gordon, if he sues Gordon, because it's on the 11 acres, so something 11 acres away, if somebody slips and falls, Gordon's covered for that. But if Robert is sued, is Robert covered? You come to the same question as here, whether he's a resident relative. In response to Judge Fisher's question, we don't concede that the other Jacobs factors are met, in particular. No, I wasn't saying. I was observing what the district court found. I'm not saying you conceded them. So that's fine. I was trying to focus on those elements. Then we come back to the point of Jacobs. They were separated by a wall. Here, they're separated by 300 feet. And a fence. And a fence. In Jacobs, these two families, one household, Irma, depended very strongly on the head of the other, Connie, are not the same household. How here, when 300 feet instead of a wall divide them, can they be considered members of the same household? All right. Thank you very much. Thank you, Your Honor. Interesting case, and we thank counsel for their illuminating presentations.
judges: Fisher, Bea, Friedland